UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

OCCIDENTAL FIRE & CASUALTY )
COMPANY OF NORTH CAROLINA, )
                            )
        Plaintiff,          )
                            )
    v.                      )        No. 2:19 CV 67 CDP
                            )
FRANKLIN BUSH,              )
                            )
        Defendant.          )

## MEMORANDUM AND ORDER

In January 2015, plaintiff Occidental Fire & Casualty Company of North

Carolina determined that its insured, defendant Franklin Bush, owed $278,069.51 in

overpaid indemnities under federally reinsured crop insurance policies, and an

overdue insurance premium in the amount of $41,863.31.   The insurance policies

contain a provision mandating arbitration on all disputes involving determinations

made by Occidental and requiring that arbitration proceedings be initiated within

one year of the disputed determination.   Neither party initiated arbitration

proceedings on Occidental's January 2015 determination.   Because judicial

proceedings are unavailable to resolve the dispute in the first instance, I will dismiss

Occidental's complaint and Bush's counterclaim, but without prejudice pending

mandatory arbitration.

**Background**

Defendant Bush is a retired farmer whose crops were insured under federally reinsured crop insurance policies issued by Occidental through its administrative arm, Agrilogic.   For Crop Years 2011, 2012, and 2013, Bush submitted historical production and acreage reports to Occidental from which Occidental determined that Bush suffered losses each year.   Occidental paid indemnities to Bush for his reported losses.   After an audit initiated by the U.S. Department of Agriculture's Risk Management Agency (RMA), Occidental reviewed the relevant policies and made changes to Bush's historical acreage and production reports for Crop Years 2011 through 2013.   As a result of these changes, Occidental determined that it had overpaid indemnities to Bush.   It informed Bush of this determination in a letter dated September 23, 2014.

In October 2014, Bush requested that Occidental review its September 2014 determination, stating that his records did not support some of Occidental's information.   Upon further review, Occidental made additional changes, which reduced the amount of overpaid indemnities it claimed Bush owed.   On January 13, 2015, Occidental notified Bush of its determination that he owed $278,069.51 in overpaid indemnities and an overdue premium for Crop Year 2014 in the amount of $41,863.31.   Bush never repaid the alleged overpaid indemnities or the 2014 premium.

Invoking federal diversity jurisdiction, Occidental filed this judicial action on August 6, 2019, seeking a declaration that it is entitled to recover overpaid indemnities for Crop Years 2011, 2012, and 2013, as well as the unpaid premium for Crop Year 2014, totaling $319,932.82.   Occidental also seeks recovery of these monies under common law theories of "contractual reimbursement," unjust enrichment, money had and received, and "account stated"; and it seeks to recover its attorney's fees as provided by the insurance contract.

Bush filed a counterclaim, alleging that Occidental's retroactive revisions to his reports were improper and illegal given that it lacked evidence that Bush knowingly misreported his actual production history, which is required under the insurance policies for Occidental to recover overpaid indemnities.   Bush contends that the revised production reports were created at RMA's behest when RMA reinsured all policies issued by Occidental and Agrilogic, and not on account of any alleged misinformation.   Bush also asserts that the RMA directed in 2016 that insurance providers such as Occidental restore actual production histories of insureds such as himself, but that Occidental failed to do so.   Bush brings claims of breach of contract, bad faith, and negligence, asserting that Occidental's conduct caused him to suffer financial damage, lost crop insurance coverage, and continuous injury.   He seeks punitive damages and attorney's fees.

**Federally Reinsured Crop Insurance**

The Federal Crop Insurance Corporation (FCIC) is a federal agency

established under the Federal Crop Insurance Act to administer the federal crop

insurance program.   7 U.S.C. § 1503.   The FCIC provides reinsurance to approved

insurers of producers of agricultural commodities grown in the United States.   7

U.S.C. § 1508(k)(1).   It regulates premiums, authors and approves policy terms,

defines the rights and obligations of the insurer and insured, mandates the terms of

dispute resolution procedures under subject policies, and reinsures FCIC created or

approved policies issued by private insurers to farmers.   *See William J. Mouren*

*Farming, Inc. v. Great Am. Ins. Co.*, No. CV F 05-0031 AWI LJO, 2005 WL

2064129, at *2 (E.D. Cal. Aug. 24, 2005).   The RMA acts on behalf of the FCIC to

administer FCIC programs and to underwrite crop insurance policies that are sold

and serviced by private insurance companies.   USDA, Risk Management Agency,

https://legacy.rma.usda.gov/help/faq/basics.html (last updated Aug. 14, 2008).

"For all relevant and practical purposes, the RMA and the FCIC are one and the

same."   *William J. Mouren Farming*, 2005 WL 2064129, at *2.

When the relevant policies here were in effect, Occidental and the FCIC were

parties to a Standard Reinsurance Agreement (SRA), which is a cooperative

financial assistance agreement establishing the terms under which the FCIC

provides reinsurance and subsidies on eligible crop insurance contracts sold by the

insurance provider.   USDA, Risk Management Agency, Reinsurance Agreements,

https://www.rma.usda.gov/en/Topics/Reinsurance-Agreements (last viewed Apr.

21, 2020).   The SRAs require the approved insurance provider (AIP) to bear a

sufficient share of any potential loss under the agreement so as to ensure that the

reinsured company will sell and service policies of insurance in a sound and prudent

manner.   7 U.S.C. § 1508(k).

Under its rule-making authority, the FCIC promulgates rules and regulations

setting the terms of crop-insurance contracts issued by private AIPs such as

Occidental.  *William J. Mouren Farming*, 2005 WL 2064129, at *2.   Occidental

sold insurance policies under these FCIC regulations.   Unlike typical private

insurance agreements, the federal government backs the policies sold subject to

FCIC reinsurance.   These policies must therefore adhere to governing regulations,

which have the force of federal law.  *Williamson Farm v. Diversified Crop Ins.*

*Servs.*, No. 5:17-CV-513-D, 2018 WL 1474068, at *1 (E.D.N.C. Mar. 26, 2018)

(citing *Felder v. FCIC*, 146 F.2d 638, 640 (4th Cir. 1944); *Byrne v. FCIC*, 289 F.

Supp. 873, 874 (D. Minn. 1968)), *aff'd*, 917 F.3d 247 (4th Cir. 2019).  *Cf. FCIC v.*

*Merrill*, 332 U.S. 380, 385 (1947) (effect given to regulations is "as if they had been

enacted by Congress directly").   The Federal Common Crop Insurance Policy Basic

Provisions, codified at 7 C.F.R. § 457.8, apply to Bush's policies at issue here.  (*See*

ECF 1-1 ("Policy")).   The terms and conditions of these Basic Provisions preempt

any contrary state laws that would apply to other insurance contracts normally

issued by private insurance companies.   *See William J. Mouren Farming*, 2005 WL

2064129, at \*2.

In relevant part, § 20 of the Basic Provisions and Bush's Policy with

Occidental provides:

> (a)   If you and we fail to agree on any determination made by us . . . , the disagreement may be resolved through mediation . . . .   If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA)[.]
> > (1)   All disputes involving determinations made by us . . . are subject to mediation or arbitration. . . .
> > . . .
> (b)   Regardless of whether mediation is elected:
> > (1)   The initiation of arbitration proceedings must occur within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later;
> > (2)   If you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve the dispute through judicial review;
> > (3)   If arbitration has been initiated in accordance with section 20(b)(1) and completed, and judicial review is sought, suit must be filed not later than one year after the date the arbitration decision was rendered[.]

7 C.F.R. § 457.8 (Reinsurance Policies); Policy at pp. 31-32.[1]   Regardless of

whether the dispute is addressed in mediation, arbitration, or judicial review,

> if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is

---

[1] For purposes of the Policy, "you" refers to the insured producer and "we" and "us" refer to the insurance company.   (Policy at p.1., preamble.)

applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, an interpretation must be obtained from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.

7 C.F.R. § 457.8 (Reinsurance Policies); Policy at p. 32, § 20(b)(4); *see also* Policy

at p. 32, § 20(a)(1).   Any interpretation by the FCIC is binding.   Policy at p. 32, §

20(a)(1)(i), (b)(4).

## Discussion

Bush moves to dismiss Occidental's complaint in its entirety for failure to

state a claim, arguing that Occidental's failure to timely initiate arbitration on its

disputed determination of overpaid indemnities and for premium payment bars it

from seeking judicial relief.[2]   In a separate motion, Bush moves to dismiss

Occidental's request for declaratory relief, arguing that the availability of a legal

remedy bars this equitable claim.   Occidental moves for judgment on the pleadings,

arguing several bases for dismissal of Bush's counterclaim, including that the Policy

bars Bush from seeking judicial relief because he failed to timely initiate arbitration.

I review a motion for judgment on the pleadings and Rule 12(b)(6) motions to

dismiss under the same legal standard.   *See Clemons v. Crawford,* 585 F.3d 1119,

1124 (8th Cir. 2009).   Therefore, when reviewing Bush's motions to dismiss, I

consider the factual allegations of the complaint as true to determine if the complaint

---

[2]  Within the body of his memorandum in support, Bush makes a passing reference to the appropriateness of possibly referring the case to arbitration.   (ECF 10 at p. 2.)

states a "claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009).   Likewise, on Occidental's motion for judgment on the pleadings, I consider the factual allegations of the counterclaim as true and grant all reasonable inferences in favor of the nonmoving party.   *Clemons*, 585 F.3d at 1124.   I may not grant judgment on the pleadings unless "the moving party has clearly established that no material issue of fact remains and [it] is entitled to judgment as a matter of law."   *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004) (internal citation and quotation marks omitted).

The core issue in resolving the parties' motions is whether either party can seek initial relief on their respective claims through judicial action given that neither party initiated mandatory arbitration proceedings on their dispute involving Occidental's January 2015 determination.   For the reasons that follow, I conclude that neither party can, and I will dismiss this action.

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1, *et seq.*, applies here because a written agreement to arbitrate exists within a contract involving commerce.   9 U.S.C. § 2.   *See also In re 2000 Sugar Beet Crop Ins. Litig.*, 228 F.Supp.2d 992, 995 (D. Minn. 2002) (federal crop insurance policy is subject to FAA because "insurance policies are contracts 'involving commerce'") (citing *United States Dep't of Treasury v. Fabe,* 508 U.S. 491 (1993); *Allied–Bruce*

*Terminix Co., Inc. v. Dobson*, 513 U.S. 265 (1995)); *Wardlaw v. Rural Cmty. Ins.*

*Servs.*, No. 1:10-CV-01004, 2010 WL 4259792, at *1 (W.D. Ark. Sept. 27, 2010),

*R&R adopted*, No. 1:10-CV-01004, 2010 WL 4235662 (W.D. Ark. Oct. 21, 2010)

(FAA applies to FCIC federal crop insurance policies).   Accordingly, I must

enforce the Policy's arbitration provisions according to their terms.   See 9 U.S.C. §

2; *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019).

The FAA "reflects 'a liberal federal policy favoring arbitration.'"   *Torres v.*

*Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (quoting *AT & T Mobility LLC v.*

*Concepcion*, 563 U.S. 333, 339 (2011)).   An arbitration agreement's scope is

interpreted liberally, with any doubts resolved in favor of arbitration, "whether the

problem at hand is the construction of the contract language itself or an allegation of

waiver, delay, or a like defense to arbitrability."   *Moses H. Cone Mem'l Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also MedCam, Inc. v. MCNC*,

414 F.3d 972, 975 (8th Cir. 2005).

Here, the parties agree that the Policy's arbitration provision is valid; and a

dispute involving Occidental's January 2015 determination exists between them,

thereby bringing the dispute within the provision's scope.   The parties disagree,

however, as to who bears the responsibility under the Policy to initiate arbitration

proceedings on the dispute and thus whether that party's failure to do so bars their

seeking judicial relief on related claims.   Bush contends that Occidental cannot

seek judicial relief on its claims for overpaid indemnities and an overdue premium

because arbitration proceedings were not initiated within one year of Occidental's

January 2015 determination, and indeed were never initiated.   In response,

Occidental argues that the Policy's arbitration provision requires that the insured

policyholder, and not the insurer, initiate arbitration proceedings and that therefore

only Bush was required to seek arbitration to preserve his right to judicial relief.

Under the express terms of the Policy, if Bush and Occidental "fail to agree on

*any* determination" made by Occidental, "the disagreement *must* be resolved

through arbitration[.]"   (Emphasis added.)[3]   This mandatory arbitration provision

applies to "*all* disputes involving determinations made by" Occidental.   (Emphasis

added.)   And "the initiation of arbitration proceedings must occur within one year"

of the date Occidental rendered the disputed determination.   As stated above, the

question is whether the Policy's "initiation of arbitration" requirement applies only

to Bush or to both Bush and Occidental to preserve their respective right to seek

judicial relief.

An insurer's disputed claim to recover overpayment from its insured falls

within the scope of the Policy's arbitration provision.   *See William J. Mouren*

*Farming*, 2005 WL 2064129, at *8.   And § 20 requires that "any" and "all"

---

[3]  This is in the event mediation failed or was not pursued.   It is unclear whether the parties
participated in mediation on their dispute.   *See* ECF 5 (seeking extension of time to answer
complaint because parties agreed to mediation).

disagreements on the insurer's determinations must be resolved through arbitration

in accordance with the rules of the American Arbitration Association.   "Making the

company's determinations conclusive [without arbitration] would conflict with

those provisions."   Common Crop Insurance Regulations; Basic Provisions; and

Various Crop Insurance Provisions, 62 FR 65130-01, at *65138, 1997 WL 756435

(Dec. 10, 1997).   Section 20 does not state that the disagreement *may* be resolved by

arbitration; nor does it say that it will be resolved by arbitration only if the *insured* so

chooses.   *Nobles v. Rural Cmty. Ins. Servs.*, 122 F. Supp. 2d 1290, 1296 (M.D. Ala.

2000).   "It says it will be arbitrated."   *Id.*   The arbitration is therefore mandatory

without regard to the identity of the initiating party.   Accordingly, the mandate to

arbitrate disputes relating to determinations made by Occidental applies with equal

force to Occidental, and nothing precluded Occidental from initiating arbitration on

its January 2015 determination wherein it claimed that Bush owed it monies under

the Policy.[4]

Section 20 also unequivocally provides that arbitration proceedings must be

initiated within one year of the disputed determination.   Policy at p. 32, § 20(b)(1).

Section 20(b)(1) does not limit its application to only those arbitration proceedings

initiated by an insured.   Its plain language is broad and applies to all arbitration

---

[4] I agree with Bush that this distinction is significant, that is, that Bush had no claim against
Occidental during the period in question and that Occidental is the party who seeks a binding and
enforceable monetary judgment against him as an individual.   (*See* ECF 20 at pp. 4, 5.)

proceedings involving determinations made by the insurer, regardless of who

initiates the proceedings.   Notably, another arbitration section of 7 C.F. R. § 457.8

and the Policy expressly assigns the burden of seeking arbitration to the insured.

*See* Policy at p. 31, § 18(k)(4).   If the FCIC intended for the insured – and only the

insured – to bear the same burden under § 20, it could have said so.   *Cf. Russello v.*

*United States*, 464 U.S. 16, 23 (1983).

It is undisputed that over one year has passed since the January 2015

determination giving rise to Occidental's claims in this action.   Bush argues that

Occidental's failure to initiate arbitration on its claims within that one-year period

forever bars it from seeking judicial relief.   But whether arbitration is timely

initiated is a question to be resolved by an arbitrator, not the Court.   *J.O.C. Farms,*

*L.L.C. v. Fireman's Fund Ins. Co.*, 737 F. App'x 652, 656 (4th Cir. 2018) (citing

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002)).   "[I]ssues of

procedural arbitrability, *i.e.*, whether prerequisites such as *time limits*, notice, laches,

estoppel, and other conditions precedent to an obligation to arbitrate have been met,

are for the arbitrators to decide."   *Howsam*, 537 U.S. at 85 (internal quotation marks

and citation omitted) (emphasis in *Howsam*).   *See also John Wiley & Sons, Inc. v.*

*Livingston*, 376 U.S. 543 (1964); *Automotive, Petroleum & Allied Indus. Emps.*

*Union, Local No. 618 v. Town & Country Ford, Inc.*, 709 F.2d 509 (8th Cir. 1983).

Without this threshold determination properly made by an arbitrator, I am unable to

conclude that Occidental is forever barred from seeking judicial relief on its claims.

I reach the same conclusion with Bush's counterclaim.   Because Bush's claims involve a dispute between him and Occidental on one or more determinations made by Occidental, they are subject to mandatory arbitration under § 20. Although Bush argues that his claims fall outside the parameters of the Policy provisions and thus may be brought under state common law theories of recovery, I cannot conclusively determine this to be so – especially given the liberal scope given to arbitration provisions as well as the Policy's preemptive effect over state law. Without the parties having participated in arbitration, I cannot decide here whether or which terms of the Policy and/or whether or which of an arbitrator's findings might have preclusive effect in a judicial proceeding.   *See Nobles*, 122 F. Supp. 2d at 1301.   Because the issues are not properly before the Court at this time, I will not opine on whether Bush may recover on his claims in this forum.   *Id.*   The parties must first comply with the relevant contractual provisions before litigating their claims here.   *Id.*

Nor does Bush's argument that his claims did not ripen until Occidental filed its judicial complaint in August 2019 relieve him from mandatory arbitration on the claims.   Whether initiating arbitration now on claims first raised in August 2019 involving a determination made in January 2015 would be timely under the terms of the Policy is a matter for an arbitrator to decide.   And, indeed, Bush alludes to that

possibility.   (*See* ECF 20 at p. 9.)   It is not my role to determine whether initiation

of arbitration proceedings today – by either party – would be untimely under the

Policy.

I also reject Occidental's argument that Bush waived his right to have this

dispute arbitrated by failing to initiate arbitration proceedings within one year of

January 13, 2015.   I may find waiver if Bush 1) knew of an existing right to

arbitration, 2) acted inconsistently with that right, and 3) prejudiced Occidental by

his inconsistent acts.   *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d

1115, 1117 (8th Cir. 2011); *Ritzel Commc'ns, Inc. v. Mid-Am. Cellular Tel. Co.*, 989

F.2d 966, 969 (8th Cir. 1993).   *See also In re 2000 Sugar Beet Crop Ins. Litig.*, 228

F. Supp. 2d at 997.   Although Bush knew of the right to arbitrate given that it was

clearly set out in the Policy, I cannot conclusively find that he acted inconsistently

with that right or that Occidental was prejudiced.   As noted above, the onus was not

on Bush alone to pursue arbitration – especially in the circumstances here where it

was Occidental, and not Bush, that sought and continues to seek affirmative

monetary relief on its January 2015 determination.   I cannot say that Bush engaged

in acts inconsistent with the right to arbitrate if he had no claim and sought no

affirmative relief against Occidental within the one-year period after Occidental

issued its determination.   I also cannot find that Occidental was prejudiced by

Bush's failure to initiate arbitration proceedings within that year.   Nothing

precluded Occidental from initiating arbitration proceedings on its claims for affirmative relief, and it would be difficult at best to show prejudice when Occidental itself waited over four years to pursue any action on the January 2015 determination.[5]   That resolution of a dispute might be complicated is not grounds for me to find prejudice or waiver of arbitration.   *See In re 2000 Sugar Beet Crop Ins. Litig.*, 228 F. Supp. 2d at 998.   Given the strong federal policy favoring arbitration, courts are encouraged to resolve any doubts concerning waiver of arbitrability in favor of arbitration.   *Ritzel Commc'ns*, 989 F.2d at 968-69.   I will do so here.

Finally, Occidental avers that it has requested an interpretation from the FCIC on whether § 20's burden to initiate arbitration proceedings lies with the insurer, the insured, or both, and it asks that I delay my ruling on Bush's first motion to dismiss until FCIC's response given that its interpretation will be binding.   But under the terms of the Policy, an FCIC interpretation is likewise binding on the arbitrator. *See* Policy at p. 32, § 20(a)(1)(i).   Given that the disputes in this action are subject to mandatory arbitration, that the timeliness of initiating arbitration proceedings is an issue for the arbitrator to resolve, and that FCIC interpretations are binding on the arbitrator, there is no compelling reason for me to delay my ruling.

Under the terms of the federal code and the Policy, any and all disputes

---

[5]  Notably, under the terms of the Policy, Occidental cannot waive § 20's arbitration provisions. *See* Policy at p. 1, preamble.

involving a determination by Occidental must be resolved through arbitration unless

they are successfully mediated.   "[N]ot even the temptations of a hard case can

elude the clear meaning of the regulation."   *Merrill*, 332 U.S. at 386.   The parties

are therefore required to follow the administrative scheme for resolution of their

claims, which they have failed to do in this case.   If this dispute is to be resolved at

all, it must be through mediation or arbitration and not by judicial action in the first

instance.   I am not persuaded that the parties need not exhaust the administrative

avenue in this case.   *See Buschkoetter v. Johanns*, No. 8:05CV115, 2006 WL

1479165, at *4 (D. Neb. May 24, 2006).

I will therefore dismiss Occidental's complaint and Bush's counterclaim, but

without prejudice.   Given this disposition, I need not decide the remaining issues

raised by the parties in this case.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Franklin Bush's First Motion to

Dismiss Based on Plaintiff's Failure to Comply with Arbitration Provision [9] is

granted.

**IT IS FURTHER ORDERED** that plaintiff Occidental Fire & Casualty

Company of North Carolina's Motion for Judgment on the Pleadings as to

Defendant Bush's Counterclaim [22] is granted to the extent Occidental seeks

dismissal of Bush's counterclaim for lack of arbitration.   In all other respects, the

motion is denied without prejudice.

**IT IS FURTHER ORDERED** that plaintiff Occidental Fire & Casualty

Company of North Carolina's complaint and defendant Franklin Bush's

counterclaim are dismissed without prejudice.

All remaining motions are denied as moot without prejudice.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 26th day of May, 2020.